**UNITED STATES DISTRICT COURT** **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 1:22-CR-115(11) |
| | § | |
| JULIO CESAR MARTINEZ-HERNANDEZ | § | |

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Julio Cesar Martinez-Hernandez's ("Martinez-Hernandez") *pro se* Motion (#713) filed pursuant to 18 U.S.C. § 3582(c)(2)[1] and 18 U.S.C. § 3582(c)(1) wherein Martinez-Hernandez seeks a reduction of his term of imprisonment. The Government filed a response in opposition (#732). United States Probation and Pretrial Services ("Probation") reviewed the filings and recommends denying the motion. Having considered the motion, the submissions of the parties, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be dismissed or, in the alternative, denied.

I. Background

On November 2, 2022, a federal grand jury in the Eastern District of Texas, Beaumont Division, returned a ten-count Indictment (#2) charging Martinez-Hernandez along with fifteen codefendants in Count One with Conspiracy to Possess With the Intent to Distribute and Distribution of a Controlled Substance (cocaine HCl and methamphetamine), in violation of 21 U.S.C. §§ 841(a)(1) & 846; and in Count Ten with Possession with Intent to Distribute a

[1] To the extent Martinez-Hernandez's motion is based on 18 U.S.C. § 3582(c)(2), this portion of the motion was denied by the court by Order dated March 26, 2026 (#727), and has no bearing on the current proceeding. Because he was sentenced in 2024, Martinez-Hernandez has already received the benefit of Amendment 821 to the United States Sentencing Guidelines ("U.S.S.G.") that went effect on November 1, 2023, and he is entitled to no further relief.

Controlled Substance (cocaine HCl), in violation of 21 U.S.C. § 841(a)(1). On May 3, 2023, upon Martinez-Hernandez's Waiver of Indictment (#299), the United States Attorney filed an Amended Information (#292), charging him with Conspiracy to Possess with the Intent to Distribute and Distribution of a Controlled Substance (cocaine HCl). Also on May 3, 2023, Martinez-Hernandez entered into a Plea Agreement (#313) and pleaded guilty to Count One of the Amended Information before the undersigned judge. On May 15, 2024, the court sentenced Martinez-Hernandez to a term of 60 months' imprisonment, the mandatory minimum sentence, followed by four years of supervised release in accordance with the provisions of the Plea Agreement (#583). Martinez-Hernandez filed a Notice of Appeal on July 17, 2024 (#615), but it was dismissed by the United States Court of Appeals for the Fifth Circuit on July 24, 2025 (#704). Martinez-Hernandez, age 46, is currently housed at Federal Correctional Institution Thomson ("FCI Thomson"), located in Thomson, Illinois. His projected release date is February 10, 2027.

The nature and circumstances of Martinez-Hernandez's offense of conviction are summarized as follows. Beginning in May 2020, investigators with the Drug Enforcement Administration ("DEA"), the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), and other local agencies began investigating a drug trafficking organization ("DTO") trafficking methamphetamine, cocaine HCl, and cocaine base in multiple cities within the Eastern District of Texas and elsewhere. Investigators utilized physical surveillance, wiretaps, and confidential sources to obtain information regarding the DTO's drug trafficking activities. During the investigation, investigators located a stash house maintained by Codefendant Nekia Byrd ("Byrd") in Houston, Texas. Surveillance of the stash house allowed investigators to identify multiple

people coming and going from the location. Martinez-Hernandez was identified as a member of the conspiracy, and the following paragraph details his known involvement.

On November 16, 2021, investigators observed Codefendant Terance Green ("Green") traveling towards Houston and notified Houston agents that Green may be headed to Byrd's stash house. Houston agents were able to locate Green exiting the residence with a black draw-string gym bag and then meeting with another individual in a separate vehicle. A hand-to-hand exchange took place between Green and the other individual. The other vehicle was observed traveling eastbound from Houston to Port Arthur, Texas, and was possibly carrying a large quantity of narcotics. Subsequent to the surveillance, Jefferson County Sheriff's Office deputies conducted a traffic stop on the other vehicle and an officer with the Beaumont, Texas, Police Department ("BPD") arrived on scene to assist with the stop. The driver of the other vehicle was identified as Martinez-Hernandez. Martinez-Hernandez's hands were visibly shaking while he was looking for his vehicle insurance paperwork. The deputy instructed Martinez-Hernandez to exit the vehicle and requested consent to search the vehicle, which he provided. The BPD officer began searching the vehicle on the passenger side and located a black draw-string backpack on the rear right floorboard. Inside the bag were two rectangular, brick-like items that are commonly seen in the packaging of narcotics. The substance was field tested and tested positive for cocaine. The seized packages were analyzed by the DEA laboratory and were determined to be a total amount of 1.995 kilograms of cocaine HCl.

Martinez-Hernandez signed the Factual Basis wherein he admitted he was a member of a conspiracy that existed for the purpose of trafficking cocaine HCl from May 29, 2020, through

July 18, 2022. During the course of the conspiracy, he conspired with other persons to possess with intent to distribute cocaine.

In his motion, Martinez-Hernandez maintains that his sentence should be reduced to 37 months' imprisonment, which he claims is authorized under the United States Sentencing Guidelines. Martinez-Hernandez asserts that when reviewing his motion, the court should consider his "personal history and characteristics," "his sentence relative to the nature and seriousness of the offense, deter crime, and protec[t] the public (Petitioner will be deported when he finishes his sentence)," and "the need to avoid unwarranted sentencing disparities among similarly-situated defendants." Although, in the Presentence Investigation Report, Probation calculated a guidelines imprisonment range of 30 to 37 months, Martinez-Hernandez overlooks the fact that the imposition of his sentence was not controlled by the Sentencing Guidelines but by the applicable federal statute, 21 U.S.C. § 841(b)(1)(B)(ii)(II), which mandates a sentence of not less than 5 years' imprisonment. Accordingly, Martinez-Hernandez was sentenced to the statutory minimum sentence of 60 months, which is unaffected by the § 3553(a) factors except in limited circumstances not applicable here.

## II. Compassionate Release

### A. Controlling Law

A judgment of conviction that imposes a sentence of imprisonment is a "'final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)); *accord Freeman v. United States*, 564 U.S. 522, 526 (2011); *see* 18 U.S.C. § 3582(c). Section 3582(c)(1)(A) embodies a narrow exception to a conviction's finality. *See Rutherford v. United States*, 608 U.S. ___, 146

S. Ct. 1320, 1326 (2026). This statute gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment. The First Step Act of 2018 ("the Act"), Pub. L. No. 115-391, 132 Stat. 5194, in part, amended 18 U.S.C. § 3582(c)(1)(A), which currently provides:

> (A) the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a)[2] to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
> >
> > and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

This provision is commonly referred to as "compassionate release." *See, e.g.*, *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023) ("We often refer to this as 'compassionate

---

[2] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") provisions and policy statements; any pertinent policy statement of the United States Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

release' because courts generally use it for prisoners with severe medical exigencies or infirmities."). The First Step Act "opened a new procedural route for seeking a reduction" by allowing the prisoner to "request that the [BOP] file a motion on his behalf, and, if it declines or fails to do so within 30 days, he may file a motion himself." *Rutherford*, 146 S. Ct. at 1328 (citing 18 U.S.C. § 3582(c)(1)(A)).

Rather than define "extraordinary and compelling reasons," Congress elected to delegate its authority to the United States Sentencing Commission ("Commission"). *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *Rutherford*, 146 S. Ct. at 1327; *United States v. Jean*, 108 F.4th 275, 278 (5th Cir. 2024), *abrogated on other grounds by United States v. Austin*, 125 F.4th 688, 692 (5th Cir. 2025); *United States v. Jackson*, 27 F.4th 1088, 1090 (5th Cir. 2022); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021); *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021). Although the Commission issued a policy statement prior to the passage of the Act that described the reasons that qualify as extraordinary and compelling, that policy statement referenced only those motions filed by the Director of the BOP—thus, the United States Court of Appeals for the Fifth Circuit and other courts held that it was inapplicable to motions filed by defendants on their own behalf. *See Jackson*, 27 F.4th at 1090; *Cooper*, 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392.

Effective November 1, 2023, the Commission—responding to, among other things, the Act—amended the Guidelines to extend the applicability of the policy statement set forth in U.S.S.G. § 1B1.13 to defendant-filed motions and to broaden the scope of what qualifies as "extraordinary and compelling" reasons potentially warranting compassionate release. *See*

U.S.S.G. § 1B1.13. Section 1B1.13(b), as amended, identifies six categories of circumstances that may qualify as "extraordinary and compelling." *Id*. § 1B1.13(b). These categories are:

(1) the medical circumstances of the defendant;

(2) the age of the defendant;

(3) the family circumstances of the defendant;

(4) whether the defendant was a victim of abuse while in custody;

(5) other reasons similar in gravity to those previously described; and

(6) an unusually long sentence.

*Id*. § 1B1.13(b)(1)-(6).

As a result, a prisoner seeking compassionate release on his own motion must satisfy the following hurdles:

(1) the defendant must have exhausted his administrative remedies;

(2) "extraordinary and compelling reasons" must justify the reduction of his sentence or he must satisfy the requirements of § 3582(c)(1)(A)(ii);

(3) the reduction must be consistent with the Commission's applicable policy statements; and

(4) the defendant must convince the court to exercise its discretion to grant the motion after considering the § 3553(a) factors.

*Jackson*, 27 F.4th at 1089; *Shkambi*, 993 F.3d at 392; *accord United States v. Rollins*, 53 F.4th 353, 358 (5th Cir. 2022); *see Austin*, 125 F.4th at 692.

B. Exhaustion of Administrative Remedies

Section 3582(c)(1)(A)'s plain language makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021) ("[T]o file a proper motion for compassionate release in the district court, a prisoner must first exhaust the available administrative avenues."); *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional, but that it *is* mandatory"). Accordingly, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request. 18 U.S.C. § 3582(c)(1)(A); *Garrett*, 15 F.4th at 338 ("[A]n inmate has two routes by which he may exhaust his administrative remedies. Both begin with 'requesting that the [BOP] bring a motion on the defendant's behalf.'" (quoting *Franco*, 973 F.3d at 467)).

Although this requirement is said to be mandatory, the Fifth Circuit has treated it as "a nonjurisdictional claim-processing rule." *Franco*, 973 F.3d at 468. "Mandatory but nonjurisdictional procedural filing requirements may be waived." *United States v. McLean*, Nos. 21-40015, 21-40017, 2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022); *see United States v. Harden*, No. 4:11-CR-127-SDJ, 2025 WL 562716, at *5 (E.D. Tex. Feb. 20, 2025). Therefore, if the Government fails to "invoke § 3582(c)(1)(A)'s exhaustion requirement as a basis for denying relief," that argument is deemed waived. *McLean*, 2022 WL 44618, at *1.

The defendant bears the burden of proving that he has exhausted his administrative remedies before filing a motion for compassionate release. *United States v. Garcia-Martinez*, No. EP-24-CR-0764-DCG-1, 2025 WL 2427619, at *2 (E.D. Tex. Aug. 18, 2025); *accord United States v. DeJean*, No. 2:18-cr-120, 2025 WL 3687269, at *3 (E.D. La. Dec. 19, 2025); *United States v. Mahaffey*, No. 17-54-DLB-MAS-1, 2025 WL 1840598, at *2 (E.D. Ky. July 3, 2025); *United States v. Escobar*, No. 15-CR-150-2 (ARR), 2024 WL 2111573, at *2 (E.D. N.Y. May 10, 2024); *United States v. Avelar*, No. 3:16-cr-0351-B-2, 2022 WL 17096173, at *2 (N.D. Tex. Nov. 20, 2022); *United States v. Singleton*, No. 14-168, 2022 WL 3576767, at *1-2 (E.D. La. Aug. 19, 2022). Without evidence that the defendant requested compassionate release from the warden and that thirty days have passed since the warden received or denied the request, the defendant fails to satisfy § 3582(c)(1)(A)'s exhaustion requirement. *Avelar*, 2022 WL 17096173, at *2 (finding the exhaustion requirement was not met where a defendant provided a copy of a letter purportedly sent to the warden but did not provide proof the warden received the letter) (citing *United States v. Knox*, No. 3:12-CR-0252-B, 2020 WL 4432852, at *2 (N.D. Tex. July 31, 2020)). The Fifth Circuit has clarified that in order to exhaust his administrative remedies, a defendant must show that the BOP received his request for compassionate release before the defendant filed his motion for compassionate release with the court. *See United States v. Garrett*, 15 F.4th 335, 339-40 (5th Cir. 2021). A defendant is "required 'to properly exhaust . . . *before* filing' the motion." *Id.* at 340 (quoting *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012) (emphasis added)); *accord Franco*, 973 F.3d at 468 ("All requests for compassionate release must be presented to the [BOP] *before* they are litigated in the federal courts." *Franco*, 973 F.3d at 468 (emphasis added). The exhaustion requirement is not fulfilled if the defendant files his motion for

compassionate release with the court before he submits a request to the warden even when he subsequently requests compassionate release from the warden and exhausts his administrative remedies before the court rules on his motion. Such a court filing is deemed premature. *See DeJean*, 2025 WL at *4 (citing *Garrett,* 15 F.4th at 339-40).

A defendant's motion for compassionate release must be based on the same circumstances as those raised in his request for release to the warden of the facility where he is housed. *United States v. Dodd*, No. 4:13-CR-182-SDJ, 2020 WL 7396527, at *2 (E.D. Tex. Dec. 17, 2020) (stating that "[i]n order to exhaust her administrative remedies, a prisoner must first present to the BOP the same grounds warranting release that the prisoner urges in her motion"); *accord United States v. Gonzalez*, 849 F. App'x 116, 117 (5th Cir. 2021); *United States v. Martinez-Hernandez*, 987 F.3d 700, 703 (7th Cir. 2021); *United States v. York*, No. 4:07-CR-181-SDJ, 2025 WL 1397198, at *2-3 (E.D. Tex. May 14, 2025); *United States v. Thomas*, No. 4:19-CR-28-SDJ, 2023 WL 5279457, at *5 (E.D. Tex. Aug. 16, 2023) (citing *United States v. Mendoza-Garibay*, No. 4:13-CR-00281, 2023 WL 307459, at *1 (E.D. Tex. Jan. 18, 2023)). "It would disrupt the 'orderly system for reviewing compassionate-release applications' and 'incentivize[] line jumping' to permit defendants to present grounds for compassionate release to the Court that the BOP had not already received the opportunity to consider." *United States v. Silcox*, No. 3:17-CR-134-TAV-HBG-1, 2020 WL 4341758, at *2 (E.D. Tenn. July 28, 2020) (quoting *United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020)). Therefore, the facts asserted in an inmate's request to the warden and in his motion for compassionate release must be consistent. *United States v. Scott*, No. CR 17-114, 2024 WL 2187849, at *2 (E.D. La. May 14, 2024); *United States v. Reeves*, No. 3:18-cr-313-B, 2020 WL 3895282, at *2 (N.D. Tex. July 10, 2020); *United States*

*v. Samak*, No. 91-189, 2020 WL 2473780, at *2 (E.D. La. May 13, 2020); *see Gonzalez*, 849 F. App'x at 117.

Further, "the exhaustion requirement applies to new arguments or grounds for compassionate release developed after an earlier request for compassionate release." *United States v. Cantu*, No. 7:17-cr-01046-2, 2022 WL 90853, at *1 (S.D. Tex. Jan. 5, 2022) (citing *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020)); *accord DeJean*, 2025 WL 3687269, at *3; *Mendoza-Garibay*, 2023 WL 307459, at *2. "It is well-settled that the exhaustion requirement is not satisfied when the defendant previously sought administrative relief *on a different ground* than the ground presented to the district court." *DeJean*, 2025 WL 3687269, at *3. Successive compassionate release motions must independently satisfy the exhaustion requirement. *United States v. Ford*, No. 1:16-CR-19-HAB, 2021 WL 5980368, at *2 (N.D. Ind. Dec. 16, 2021). "If a prisoner were only required to make one request to the BOP and forever after [be] able to file new motions asserting new grounds for relief, the purpose of the exhaustion requirement would be severely undermined." *United States v. Wardle*, No. 5:18-57-KKC, 2021 WL 4822827, at *3 (E.D. Ky. Oct. 14, 2021); *accord Rivas*, 833 F. App'x at 558; *Ford*, 2021 WL 5980368, at *2.

Here, the Government invokes § 3582(c)(1)(A)'s exhaustion requirement. The Government contends that "Martinez does not satisfy the exhaustion requirement" and that "[h]e provides no evidence that he sent *any* request to the BOP or that the BOP received it." The Government further contends, "[m]uch less does [Martinez-Hernandez] provide evidence that he gave the BOP 'the information necessary to investigate [the] grounds' he now raises." The Government concludes, "[a]bsent such evidence, he 'cannot prevail' and the analysis can end

there." Probation confirms that Martinez-Hernandez has not exhausted his administrative remedies:

> The probation officer corresponded with Robert Clark, BOP Attorney, concerning Mr. Martinez-Hernandez' request for a reduction in sentence (RIS). Mr. Clark advised records indicate Mr. Martinez-Hernandez has not filed a RIS Request at Thomson and has never submitted an Administrative Remedy Request on any issue, while incarcerated. Therefore, he has not exhausted all administrative remedies prior to filing his motion with the Court.

A review of his motion also reveals that Martinez-Hernandez makes no mention and gives no indication that he attempted to exhaust his administrative remedies.

As the Government points out, there is no evidence before the court that Martinez-Hernandez, in fact, submitted *any* request for compassionate release to the warden of the facility where he was housed at the time of the filing of his motion or to any other BOP personnel. Nor does Martinez-Hernandez provide any evidence that he gave the BOP the information necessary to investigate the grounds for relief he now raises. Martinez-Hernandez did not furnish the court with a copy of any request he purportedly made to the warden or to any other BOP personnel seeking compassionate release, and no such request appears in the case file. Absent evidence of a verifiable request for compassionate release to the warden, Martinez-Hernandez cannot prevail.

The court is without authority to waive the exhaustion of administrative remedies or the 30-day waiting period. *Franco*, 973 F.3d at 468 ("Congress has commanded that a 'court *may not* modify a term of imprisonment' if a defendant has not filed a request with the BOP."); *see United States v. Harper*, No. 24-30275, 2024 WL 4664018, at *1 (5th Cir. Nov. 4, 2024) ("[B]ecause the Government properly raised the rule requiring exhaustion in the district court, 'the court *must* enforce the rule.'" (quoting *Franco*, 973 F.3d at 468)); *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) ("[B]ecause this exhaustion requirement serves valuable purposes

(there is no other way to ensure an orderly processing of applications for early release) and because it is mandatory (there is no exception for some compassionate-release requests over others), we must enforce it."); *United States v. Gomez*, No. 2:17-cr-41-KS-MTP, 2025 WL 420531, at *2 (S.D. Miss. Feb. 6, 2025) ("Congress used clear language: all requests for compassionate release must be presented to the [BOP] before they are litigated in the federal courts."); *United States v. York*, No. 17-00086-BAJ-RLB, 2024 WL 3771442, at *3 (M.D. La. Aug. 13, 2024) (recognizing that a court may not modify a term of imprisonment if a defendant has not filed a request with the BOP); *United States v. Garcia*, No. CR 2:18-1337, 2020 WL 3000528, at *3 (S.D. Tex. June 2, 2020) ("While the Court sympathizes with Defendant's plight, because he has failed to comply with the exhaustion requirements under § 3582, his motion is not ripe for review, and the Court is without jurisdiction to grant it."); *see also Ross v. Blake*, 578 U.S. 632, 639 (2016) ("[J]udge-made exhaustion doctrines . . . remain amenable to judge-made exceptions," whereas "mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion.").

In this instance, because Martinez-Hernandez presents no evidence that he submitted a request to the warden of the facility where he was housed at the time he submitted his motion for compassionate release or to any other warden or BOP personnel raising the claims he now asserts in his motion for compassionate release, he has not met his burden of proof to establish that he has exhausted his administrative remedies. Therefore, due to his failure to exhaust his administrative remedies before filing the current motion, the court lacks the authority to grant the relief Martinez-Hernandez requests.

III. Conclusion

In sum, Martinez-Hernandez has not satisfied his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. Martinez-Hernandez has failed to show that he exhausted his administrative remedies before seeking compassionate release. Therefore, in accordance with the foregoing analysis, Martinez-Hernandez's *pro se* Motion (#713) filed pursuant to 18 U.S.C. § 3582(c)(1) wherein he seeks a reduction of his term of imprisonment is DISMISSED, or in the alternative, DENIED.

SIGNED at Beaumont, Texas, this 6th day of August, 2026.

Marcia A. Crone

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE